**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RONALD ANTOINE REED, ID # 653274,** ) | |
| Plaintiff, ) | |
| vs. ) | No. 3:12-CV-1264-P-BH |
| ) | |
| **MANAGEMENT AND TRAINING CORP.,** ) | |
| **et al.,** ) | Referred to U.S. Magistrate Judge |
| Defendants. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for screening. Based on the relevant filings and applicable law, the complaint should be **DISMISSED** as frivolous.

**I. BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 against Management and Training Corporation (MTC), the private company that operates the Sanders Estes Unit of the Texas Department of Criminal Justice (TDCJ); Warden Stephen McAdams; Assistant Warden Eric Mathis; Major Wiktorik; Sergeant Kirk Jame; and Dorothy Shufelt, chief of classification. He claims that while he was an inmate at the Estes Unit on December 3, 2011, he was attacked by his cell mate, who bit off part of his ear. Plaintiff alleges that the assistant warden and major violated his rights by not considering transfers to other cells, that Shufelt violated his rights by assigning him to his cell with a younger inmate with alleged mental problems, and that MTC and McAdams, Mathis, Wiktorik, and Jame were deliberately indifferent to his medical care after the attack. (Compl. at 8-12; Magistrate Judge's Questionnaire (MJQ) Ans. 1-7). He seeks monetary damages. (MJQ Ans.10).

**II. PRELIMINARY SCREENING**

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma*

*pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.  SECTION 1983

Plaintiff seeks monetary damages under 42 U.S.C. § 1983.  That section "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.     MTC**

Plaintiff sues MTC, the private corporation that operates the Estes Unit, because it is legally responsible for that unit. (Compl. at 8). He asserts that MTC was deliberately indifferent to his medical needs. He claims that he observed wine-making and lots of drugs at the Estes Unit, and that there was no policy with regard to one inmate biting another, even though a guard told Plaintiff that it had happened several times. (MJQ Ans. 1). He further asserts that MTC has a policy of preventing inmates from filing grievances to move cells. (MJQ Ans. 9).

Private prison management companies may be sued under § 1983 for alleged constitutional violations. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). However, MTC cannot be held liable under § 1983 on a respondeat superior or vicarious liability theory. *Olivas v. Corrections Corp. Of Am.*, 408 F.Supp.2d 251, 255 (N.D.Tex. 2006); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, Plaintiff must allege that MTC has an official custom or policy that resulted in a violation of his constitutional rights. *Olivas*, 408 F.Supp.2d at 255. Plaintiff has not alleged a viable denial of medical care claim against MTC because he sues the company based only on its status as the employer. Furthermore, while Plaintiff claims that he observed illegal activity in the prison, and that he has heard that other inmates have been injured, he has not alleged any custom or policy permitting illegal activity or that resulted in his injury. Plaintiff asserts that MTC does not permit inmates to file a grievance to be transferred to another cell, but the documents he submitted make clear that housing assignments at Estes are not available through the grievance process, and cell transfers must instead be approved by either the deputy warden or the major. (Compl. at 13-14). Therefore, MTC does provide a method for seeking a transfer. Finally, inmates do not have any constitutionally protected interest in their classifications

3

within prison, including their cell assignments. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Any policy regarding cell transfers does not violate Plaintiff's constitutional rights. His claims against MTC should be dismissed as frivolous.

**B.   Individuals**

    **1.   Official Capacity Claims**

To the extent that Plaintiff is suing the individual defendants in their official capacities, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Any claims against McAdams, Mathis, Wiktorik, Jame, and Shufelt in their official capacities are essentially claims against their employer, MTC. *See Graham*, 473 U.S. at 165. Because the factual basis for any official capacity claims is the same as that for his claims against MTC, any official capacity claims against the individuals are duplicative and should be dismissed for the same reasons. *See Castro Romero v. Becken*, 256 F.3d 349, 255 (5th Cir. 2001) (finding dismissal of claims against officers in their official capacities appropriate when the "allegations duplicate claims against the respective governmental entities themselves").

    **2.   Cell Assignment Claims**

Plaintiff sues the assistant warden and a major at the prison, alleging that they violated his rights because they did not consider cell transfers. He claims that the assistant warden and the major are in charge of moving inmates from cell to cell, but they have had signs posted in their offices stating that inmates could not be moved that day, that Major Wiktorik told Plaintiff at one point that he could not move as much as he wanted to, and that he has observed Assistant Warden Mathis speak in a loud voice to an inmate who asked to be moved. (MJQ Ans. 3, 6).

Plaintiff has not alleged any personal involvement by either Mathis or Wiktorik in his cell assignment. He does not allege that they made the decision, only that they were allegedly unlikely to grant a cell transfer. A mere failure to respond to an inquiry does not rise to the required level of personal involvement for liability. *See Amir-Sharif v. Valdez*, 2007 WL 1791266, slip op. at *2 (N.D. Tex. June 6, 2007) (holding that no liability under § 1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Praylor v. Partridge*, 2005 WL 1528690, slip op. at *2 (N.D. Tex. June 28, 2005) (same). Even had these defendants been personally involved in denying Plaintiff a cell transfer, an inmate does not have a federally protected interest in having a complaint resolved to his satisfaction. *Geiger v. Flowers*, 404 F.3d 371 (5th Cir. 2005). Plaintiff's claims against Mathis and Wiktorik with regard to his cell assignment are frivolous.

Plaintiff has alleged that the chief of classification, Shufelt, was personally involved in his assignment to a cell with the inmate who bit off part of his ear. He claims she violated his constitutional rights by assigning him a cell mate who was more than ten years younger in violation of TDCJ policies and procedures and with a history of mental problems. (MJQ Ans. 5).

Shufelt's alleged failure to follow TDCJ policies with respect to age differences between cell mates does not state a viable claim because an alleged failure to follow prison rules and regulations does not give rise to a constitutional violation. *Taylor v. Howards*, 268 F.3d 1063, *1 (5th Cir. July 17, 2001), *citing Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Furthermore, as noted, inmates do not have a constitutionally protected interest in their custodial classification once assigned to a unit, even where a prisoner alleges that the classification is in error. *Harper v. Showers*, 174 F.3d at 719; *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prisoner does not

5

have a basis for a civil rights complaint simply because he disagrees with a classification decision); *see also Jennings v. BOP*, 354 Fed. App'x 60, 61 (5th Cir. Nov. 12, 2009) (affirming the district court's decision holding that a claim that a prison classification was based on erroneous determinations of a history of violence was frivolous). Plaintiff's cell assignment claims should be dismissed.

### 3. Failure-to-Protect Claims

Plaintiff further asserts that Mathis, Wiktorik and Shufelt failed to protect him because Mathis and Wiktorik were not willing to consider cell transfers, and because Shufelt assigned Plaintiff to a cell with a substantially younger inmate and with an alleged mental history. (MJQ Ans. 8). While there is no constitutionally protected interest in classification decisions, an alleged absence of reasonable safety measures to protect an inmate may provide the basis for a failure-to-protect claim. *See Luong v. Hatt*, 979 F.Supp. 481, 484-85 (N.D. Tex. 1997). To succeed with a failure-to-protect claim, a plaintiff must allege and prove that an officer had a "wanton or deliberate attitude" towards his safety. *Id*. A prison official cannot be held liable for an alleged failure to protect under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As such, the official must be aware of facts from which one could infer that a substantial risk of harm to an inmate exists *and* he must draw the inference. *Id*.

Here, Plaintiff has failed to allege any facts to support a failure-to-protect claim. He claims that Mathis and Wiktorik were not willing to grant cell transfers, but he does not allege that they were aware of any facts prior to the assault from which they could infer that Plaintiff's safety was at risk in the cell to which he was assigned. Similarly, while Plaintiff states his belief that his cell

6

mate had a history of mental health problems, he has alleged no facts to support a claim that Shufelt knew of and disregarded an excessive risk to his health and safety by assigning him to that cell. Plaintiff's failure-to-protect claims should be dismissed.

### 3.     **Medical Care Claims**

Plaintiff sues the warden, the assistant warden, the major, and Sergeant Jame, alleging that they showed deliberate indifference to his medical care. Plaintiff sues the wardens and the major based solely on their supervisory capacity. Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Id.* A plaintiff cannot make generalized allegations. *Howard v. Fortenberry,* 723 F.2d 1206 (5th Cir.1984). Here, Plaintiff has alleged no personal involvement by either of the wardens or the major with respect to his medical care. Accordingly, Plaintiff has not alleged a viable claim against these defendants.

Plaintiff also claims that the sergeant who initially treated his ear provided inadequate medical care. The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials

violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Here, Plaintiff alleges that Sergeant Jame was deliberately indifferent to his medical care because he treated Plaintiff's torn ear at the prison and did not transfer him to a hospital emergency room to see if anything could be done with the part of the ear that had been bitten off. (MJQ Ans. 4). Plaintiff states that because the attack occurred at 8:00 P.M., there was no medical staff on duty

8

at the prison. (MJQ Ans. 7). Plaintiff acknowledges that he was seen by a doctor at 9:00 A.M. the following morning who cleaned up his ear and informed him that nothing could be done regarding the deformity to the ear. *Id.*

Mere disagreement with medical treatment is insufficient to state a claim. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). A failure to provide additional treatment does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino v. Texas Dep't Crim. J*, 239 F.3d at 756. Even unsuccessful medical treatment does not give rise to a § 1983 violation. *Varnado v. Lynaugh*, 920 F.2d 321, 321 (5th Cir. 1991). Furthermore, a delay in medical care is a constitutional violation only if there has been deliberate indifference which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff's allegations do not rise to the level of deliberate indifference. He does not allege that Sergeant Jame refused to treat him, ignored his medical complaints, or intentionally treated him incorrectly. *Johnson v. Treen*, 759 F.2d at 1238. Moreover, he has not alleged that the deformity to his ear could have been addressed had he been seen by medical personnel earlier. He only claims that Defendant Jame should have had him transported to a hospital to see if the torn portion of his ear could be reattached, or that the deformity to his ear could have been lessened. Plaintiff's bare assertion is insufficient to support a claim of deliberate indifference to a substantial risk of serious harm. *See Little v. Spears*, 55 F.3d 632, *2 (5th Cir. May 2, 1995) (no deliberate indifference where an inmate received medical treatment for a serious cut to the ear forty-eight hours after injury); *Pierce v. Gonzales*, 2011 WL 703594, *11 (E.D.Cal. Feb. 18, 2011) (no deliberate indifference where the defendant did not place a severed ear piece on ice to be examined later because the

9

plaintiff received medical treatment for the torn ear and had been told by a doctor that it could not be repaired). Plaintiff's medical claims should also be dismissed.

### IV. RECOMMENDATION

Plaintiff's complaint should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[1] Plaintiff's motion for a preliminary injunction should be denied.

**SIGNED this 15th day of June, 2012.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[1] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:
    In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                    IRMA CARRILLO RAMIREZ
                                                                    UNITED STATES MAGISTRATE JUDGE